IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

___

|  |  |  |
|---|---|---|
| BETTY GEESLIN, | ) | |
| AS PERSONAL REPRESENTATIVE | ) | |
| OF THE ESTATE OF BILL | ) | |
| GEESLIN, DECEASED, | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | |
|  | ) | No. 06-2768-STA |
| KOBE BRYANT; | ) | |
|  | ) | |
| Defendant. | ) | |

___

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
___

Before the Court is Defendant Kobe Bryant's Motion for Summary Judgment (D.E. # 58) filed on April 13, 2010. Plaintiff Betty Geeslin, as Personal Representative of the Estate of Bill Geeslin, filed a response in opposition to Defendant's Motion (D.E. # 65) on May 13, 2010.[1] For the reasons set forth below, Defendant's Motion is **GRANTED**.

**BACKGROUND**

The following are undisputed for purposes of this Motion unless otherwise noted.

On November 14, 2005, Plaintiff Bill Geeslin and a friend attended the Los Angeles Lakers v. Memphis Grizzlies NBA basketball game at the FedEx Forum in Memphis, Tennessee. Def.'s Statement of Undisputed Facts ¶ 1. The Grand Casino in Tunica, Mississippi gave

___

[1] Betty Geeslin filed a Suggestion of Death (D.E. # 39) with this Court on November 16, 2009, as to Bill Geeslin. Betty Geeslin filed a Motion to Substitute a Party that same day. The Court granted Betty Geeslin's motion on November 17, 2009 (D.E. # 44).

Plaintiff the tickets. *Id*.

Plaintiff's seats were initially located in a sky box suite, but, after he arrived at the game, he was offered two court side tickets by his Grand Casino host. *Id*. at ¶¶ 2-3.[2] The floor seats were just right of one of the baskets, in the front row, in folding chairs, with an unimpeded view of the basketball court. *Id*. at ¶ 9.[3]

During the game, a Lakers player recovered a loose ball at the Grizzlies end of the floor, opposite Plaintiff's seat. *Id*. at ¶ 10. The player attempted to throw the ball to Defendant Bryant, a shooting guard for the LA Lakers, for a fast break lay-up, but the ball went out of bounds and Defendant's momentum carried him into contact with Plaintiff. *Id*. at ¶ 11. The Plaintiff did not have time to get out of Defendant's way. *Id*. at ¶ 12.

After the initial contact, the Defendant contends that he pushed his forearm into Plaintiff's chest to get up and back into the game. *Id*. at ¶ 13. The Plaintiff, however, contends that the Defendant did not simply use his forearm to get up and leave but rather asserts that the Defendant intentionally forearmed him. The Plaintiff further notes that after Defendant forearmed him, he glared at him, did not apologize, and walked away. Plaintiff feels Defendant's action was an attempt to intentionally inflict pain upon him because it was

---

[2] Defendant notes that this was not Plaintiff's first NBA basketball game. Def.'s Statement of Undisputed Facts ¶ 5. Plaintiff had attended NBA games in Houston, Texas and Memphis prior to November 14, 2005. *Id*. at ¶ 5,7. Plaintiff also attended another Memphis Grizzlies game after November 14, 2005. *Id*. at ¶ 8.

[3] Plaintiff Geeslin's ticket for the floor had a face value of $ 465.00. *Id*. at ¶ 4. The Plaintiff read both the front and the back of the tickets, with the back having stipulations on the ticket. *Id*.

unnecessary for the Defendant to forearm him.  *Id*. at ¶ 15.[4]

Following the incident between the Plaintiff and the Defendant, the Plaintiff went back to the sky box to get something to eat and to thank his host for the tickets.  *Id*. at ¶ 16.[5]  Once the game finished, the Plaintiff drove himself and his friend back to their homes in Blytheville, Arkansas.  *Id*. at ¶ 20.  Two days later, Plaintiff sought medical attention at the Great River Medical Center.  *Id*. at ¶ 21.  He was diagnosed with a bruised lung cavity and was given prescriptions for Ibuprofen, another medicine, and a breathing machine to be used at home.  *Id*.[6]  Plaintiff took the prescriptions for two weeks, and his symptoms dissipated.  *Id*.  Plaintiff also suffered from anxiety after the incident.  *Id*. at ¶ 23.  He was placed on Xanex and Ambien for sleeping by his primary-care physician.  *Id*.[7]

Two weeks after the game, the Plaintiff decided to sue the Defendant because he felt violated, because the Defendant should not have been able to "inject such pain," and because he was disrespected.  *Id*. at ¶ 27.  In his Complaint, Plaintiff asserts state law claims of assault, battery, and outrageous conduct.

---

[4] The Defendant also notes that Plaintiff in his deposition speculated as to the cause of Defendant's action.  *Id*. at ¶ 19. The Plaintiff believes that the Defendant intentionally forearmed him because the Lakers were behind, not playing well, and the referees had not called a foul on the Grizzlies player who pushed the Defendant out of bounds.  *Id*.

[5] The Defendant notes that Plaintiff testified that he told his host that the Defendant had intentionally forearmed him.  *Id*. at ¶ 16.  According to the Plaintiff, the host laughed.

[6] The Plaintiff admits that he did not miss any work as a result of the incident, and he had a history of bruising easily.  *Id*. ¶ 25.

[7] Plaintiff notes that his anxiety continued up through the date of his deposition on April 3, 2008 and that he continued to take Ambien once every two weeks as of that time. Additionally, Plaintiff's medical expenses from the visit to Great Rivers Medical Center and his primary physician were somewhere between $ 1,049.09 and $ 1,134.09.  *Id*. at ¶ 29.

The Court notes that the Plaintiff, the non-moving party, has attached an "Additional Statement of Undisputed Facts" to his response. Neither the Federal Rules of Civil Procedure nor the Local Rules, however, provide for such a practice. As such, the Court will not consider the additional statement of facts for purposes of this Motion.

In the instant Motion before the Court, the Defendant contends that no genuine issue of material fact exists and as such summary judgment is appropriate in this matter. Defendant asserts that he is not liable for the assault or battery of the Plaintiff because he did not possess the requisite intent, i.e. the intent to injure Plaintiff, when he came into contact with him. The Defendant also contends that the Plaintiff can not make out a prima facie case of outrageous conduct because he can not show that the Defendant's conduct resulted in any serious mental injury to the plaintiff. The Defendant also asserts that since his conduct was not outrageous, punitive damages are not warranted in this matter.

In response in opposition, the Plaintiff contends that he can make out the requisite showing for both assault and battery because the Defendant intentionally forearmed him in an effort to cause him harm. Additionally, the Plaintiff asserts that he can make out a prima facie case for outrageous conduct because Defendant used him as a "human punching bag," and he suffered severe mental anguish and distress as a result of the incident. Finally, the Plaintiff asserts that any determination of punitive damages at this stage would be premature.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

4

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[8]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[9]  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[10]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[11]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[12]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[13]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

---

[8] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[9] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[10] *Celotex*, 477 U.S. at 324.

[11] *Matsushita*, 475 U.S. at 586.

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[13] *Id*. at 251-52 (1989).

party will bear the burden of proof at trial."[14]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[15]  Finally, the "judge may not make credibility determinations or weigh the evidence."[16]  Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[17]

## ANALYSIS

The parties do not dispute that since the substantive law of Tennessee applies in this diversity case, the Court is bound to apply the substantive law of Tennessee as if the action had been brought in the courts of that state.[18]  Under the *Erie* doctrine, a federal court must apply the substantive law of a state as it has been determined by the highest court of the state.[19]  When the highest court of the state has not answered a particular question of law, the federal court must discern or predict how the state courts would respond if confronted with the same question.[20]

---

[14] *Celotex*, 477 U.S. at 322.

[15] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[16] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[17] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

[18] *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007).

[19] *Gahafer v. Ford Motor Co.,* 328 F.3d 859, 861 (6th Cir. 2003).

[20] *Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy*, 740 F.2d 1362, 1365 (6th Cir. 1984); *Clutter v. Johns-Manville Sales Corp.,* 646 F.2d 1151, 1153 (6th Cir. 1981).

The federal court must ascertain from all available data what the law is and apply it.[21]  In the absence of any indication that the state's highest court would adopt a rule contrary to the rule announced in an intermediate appellate court, a federal court is not free to ignore the announcement of a state appellate court on matters of state law.[22]

*1. Assault*

In Tennessee, the tort of assault is defined as "any act tending to do corporal injury to another, accompanied with such circumstances as to denote at the time an intention, coupled with the present ability, of using actual violence against the person."[23]  A defendant is not subject to liability for assault unless he commits an intentional act creating a reasonable apprehension of imminent physical harm on the part of the plaintiff.[24]  An intent to harm, rather than a mere intent to frighten must be shown.[25]

In the case at bar, the essence of Plaintiff's allegations are as follows: the Plaintiff sat

---

[21] *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601 (6th Cir. 1985).

[22] *Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676 (6th Cir. 2000).

[23] *Huffman v. State*, 292 S.W.2d 738, 742 (Tenn. 1956)(overruled in part on other grounds).

[24] *Johnson v. Cantrell*, No. 01A01-9712-CV-00690, 1999 WL 5083 at *3 (Tenn. Ct. App. Jan. 7, 1999).

[25] *Hughes v. Metro. Gov't of Nashville & Davidson County, Tennessee*, No. M2008-02060-COA-R3-CV, 2010 WL 424240 at *13-14 (Tenn. Ct. App. Feb. 4, 2010).  In this case, the Tennessee Court of Appeals noted that it was not entirely clear whether the requisite intent for assault is the intent to frighten or the intent to harm under Tennessee jurisprudence. *Id.* at * 13. The court, however, indicated that after much consideration, it believed the requisite showing was an intent to harm, not frighten. *Id.* at *14.

court side at the Los Angeles Lakers versus Memphis Grizzlies game on November 14, 2005,[26] during the course of a play, Defendant Kobe Bryant attempted to prevent the basketball from going out of bounds,[27] the Defendant was unsuccessful and ran into the Plaintiff,[28] the Defendant intentionally forearmed the Plaintiff in the chest before returning to the court.[29] The basis of Plaintiff's assault claim does not appear to be the fact that the Defendant ran into him in an attempt to keep the ball in play, but rather that he was allegedly "intentionally forearmed" to the chest.

As noted above, the first element of an assault claim under Tennessee law is an "intentional attempt" or the "unmistakable appearance of an intentional attempt to do *harm* to another person." Here, it seems to be undisputed that the Defendant's forearm made some type of contact with Plaintiff's chest when the Defendant was attempting to get back into the game. The Plaintiff adamantly characterizes this contact as an "intentional forearm to the chest" by which the Defendant intended to cause him harm.[30] To support this assertion, the Plaintiff speculates that the Defendant intended to cause him harm because (1) the Lakers were losing at the time and (2) the referee had not called a foul during the fast break.[31]

---

[26] Geeslin Dep. 12:15-18 (Apr. 3, 2008). The Court notes that in his deposition the Plaintiff indicated that the game was on November 14, 2004, not November 14, 2005. The Court, however, assumes this is a typographical error because all references in the instant Motion and his Complaint are to November 14, 2005.

[27] Geeslin Dep. 18:7-10.

[28] Geeslin Dep. 18:7-10.

[29] Geeslin Dep. 18:13-14.

[30] Geeslin Dep. 27:2.

[31] Geeslin Dep. 28:11-14.

8

The Court, however, finds that no reasonable juror could conclude that the Defendant intended to harm the Plaintiff when he effectively pushed himself off of Plaintiff's chest to get up and back in the game. As such, the Plaintiff has failed to make the requisite showing for his assault claim under Tennessee law.

Here, the incident at issue occurred at an NBA basketball game.  Even assuming that the Defendant in a frustrated or aggressive manner pushed against the Plaintiff's chest in an attempt to get up and back into the game, a reasonable juror could not conclude that Defendant's action was intended to cause Plaintiff harm.  The Defendant made no threatening remarks or advances towards Plaintiff prior to the incident.  There is no indication in the record that there was any animosity between the Plaintiff and the Defendant or that the two even knew each other prior to the incident in question.  The Court admits that the Plaintiff asserts that "he has no doubt" that the Defendant intended to harm him, but Plaintiff provides no support for this assertion other than his own beliefs and speculations.[32]  The Plaintiff's own beliefs and speculations alone are not sufficient to prevail at this stage.

Since Plaintiff has failed to proffer any evidence to indicate that the Defendant intended to harm him when he pushed into Plaintiff's chest, the Plaintiff has failed to set forth a prima facie case of assault under Tennessee law.  As such, summary judgment must be **GRANTED** as to this claim.

*2. Battery*

Under Tennessee law, a battery occurs when an individual intentionally inflicts a harmful

---

[32] Geeslin Dep. 27:2.

9

or offensive physical contact upon the person of another without the consent of the victim.[33] However, not every physical contact that is unconsented to is so offensive that it amounts to a battery.[34] For instance, the Tennessee Court of Appeals has noted that "offensive contact is contact that infringes on a reasonable sense of personal dignity ordinarily respected in a civilized society."[35] Additionally, the intent required for a battery is not an intent to cause harm. It is an intent to do the act that causes the harm.[36]

As an initial matter, it is a well established principle in the law that a spectator at a sporting event consents to having the players proceed with the game without taking precautions to protect him or her.[37] For instance, "a spectator entering a baseball park may be regarded as consenting that the players may proceed with the game without taking precautions to protect him from being hit by the ball."[38]

Here, the Plaintiff engages in what can be best described as a segmenting analysis in support of his battery claim. He breaks the contact that occurred between himself and the Defendant into two parts: (1) Defendant Bryant running into him, and (2) Defendant Bryant "intentionally forearming" him. The Plaintiff concedes that by sitting in court side seats he

---

[33] *Runions v. Tennessee State Univ.*, No. M2008-01574-COA-R3-CV, 2009 WL 1939816, at *4 (Tenn. Ct. App. July 6, 2009); *see also Cary v. Arrowsmith*, 777 S.W.2d 8, 21 (Tenn. Ct. App. 1989)..

[34] *Id*.

[35] *Doe v. Mama Taori's Premium Pizza, LLC*, No. M1998-00992-COA-R9-CV, 2001 WL 327906, at *4 (Apr. 5, 2001)(citing Restatement (Second) of Torts § 19 (1965)).

[36] Tennessee Pattern Jury Instructions Civil 8.02 (2009).

[37] Restatement (Second) of Torts § 496A (2009).

[38] *Id*.

consented to the possibility that a player, such as Defendant Bryant, might run into him during the course of a play. The Plaintiff, however, contends that he did not assume the risk or consent to be used as a "human punching bag," i.e. intentionally forearmed.

Disregarding Plaintiff's colorful characterization of Defendant Bryant's forearm to Plaintiff's chest, the Plaintiff arguably consented to the entire contact, rather than just the first segment as he suggests. Plaintiff testified that the Defendant's arms first struck him as the Defendant ran into his seat.[39] He also indicated that the Defendant fell into his seat in an attempt to keep the ball in play.[40] Plaintiff admits the he consented to or assumed the risk of the contact up to this point. Plaintiff, however, contends that he did not consent to being "forearmed" after the initial contact occurred.

The Court notes that Plaintiff provides no support for the proposition that such a segmenting analysis is appropriate in this context. In fact, the Court believes such an analysis is improper under the facts of this case. Here, the Plaintiff was sitting on the floor of an NBA basketball game when the Defendant ran into him while trying to keep the ball in play. It is reasonable that in a situation such as this, the Defendant's arms and body in general might come into contact with a spectator like Plaintiff which the Plaintiff himself concedes. It is also reasonable, however, that the Defendant might need to touch or push Plaintiff to get up and back into the game. Thus, the Plaintiff assumed the risk or consented to the entire contact between he and the Defendant.

However, even assuming that the Plaintiff did not consent to the contact between

---

[39] Geeslin Dep. 20:17.

[40] Geeslin Dep. 20:21.

Defendant's forearm and his chest, the Court finds that the contact at issue here was not offensive. Determining whether the contact was offensive requires using an objective standard: whether a reasonable person would find the contact offensive. The Court concludes that no such finding could be made.

Here, the Defendant pushed Plaintiff in the chest before returning to the game. A reasonable juror could not possibly conclude that such an action under these circumstances constitutes an offensive contact. There can be no reasonable infringement of one's personal dignity from contact arising from the retrieval of a basketball under these facts. As an additional matter, the Court notes that the Plaintiff did exhibit a bruised lung cavity after the contact occurred.[41] Therefore, the contact between Plaintiff and Defendant was arguably harmful. However, this is a moot point in light of the Court's ruling that the Plaintiff consented to the contact between the parties. As such, summary judgment is **GRANTED** as to Plaintiff's battery claim as well.

*3. Outrageous Conduct*

In Tennessee, the tort of intentional infliction of emotional distress is synonymous with the tort of outrageous conduct.[42] To make a claim for intentional infliction of emotional distress, the Plaintiff must show that: (1) the conduct complained of must be intentional or reckless, (2) it must be so outrageous that it is not tolerated by a civilized society, and (3) it must result in serious mental injury.[43] Outrageous conduct does not include "mere insults, indignities, threats,

---

[41] Geeslin Dep. 33:23-25.

[42] *Lyons v. Farmers Ins. Exchange*, 26 S.W.3d 888, 893 (Tenn. Ct. App. 2000).

[43] *Id*.

annoyances, petty oppression or other trivialities."[44]  Thus, a plaintiff seeking damages for intentional infliction of emotional distress must meet an exacting standard."[45]  "Recovery for intentional infliction of emotional distress is limited to mental injury which is so severe that no reasonable person would be expected to endure it."[46]

      Here, the Defendant does not seem to dispute that he intentionally pushed his forearm into Plaintiff's chest.  As such, the first element of Plaintiff's IIED claim is met.  Plaintiff, however, fails to show that Defendant's conduct was "so outrageous that it is not tolerated by a civilized society."  The Court notes that Plaintiff artfully and colorfully characterizes the contact that occurred between Defendant's forearm and his chest.  He characterizes this contact as an "intentional forearm," himself as a "human punching bag," and then asserts he was "slugged" in his response to the instant Motion.  While these descriptions may be colorful, they are not sufficient for Plaintiff to meet the "exacting standard" set forth for IIED claims.

      The Plaintiff arguably analogizes the circumstances of his case to that of *Alexander v. Newman,* a police brutality case.[47]  In *Alexander*, the plaintiff suffered an unprovoked beating at the hands of two police officers.[48]  In all, the plaintiff was hit approximately ten times with a

---

[44] *Arnett v. Domino's Pizza I*, L.L.C., 124 S.W.3d 529, 539 (Tenn. Ct. App. 2003).

[45] *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999).

[46] *Arnett*, 124 S.W.3d at 540.

[47] *Alexander v. Newman*, 345 F.Supp.2d 876 (W.D. Tenn. 2004).  The Plaintiff admits that the factual circumstances of the present case and a police brutality case are not identical.  This, however, is the only case he cites for the proposition that the conduct here is outrageous.

[48] *Id*. at 888.

sap.[49] The court found that such conduct was "so outrageous that a civilized society would find it intolerable" and thus the plaintiff was able to sustain a claim for IIED.[50] Here, the Plaintiff argues that he was "slugged" without provocation because the Defendant was "mad, angry, upset, and frustrated" by essentially the score of the game.

As a general matter, the Court notes that a police brutality case involving an unprovoked beating is not analogous to the circumstances here. In the instant case, Plaintiff was a spectator at a basketball game when he was run into by a player attempting to keep the ball in play. The Plaintiff was forearmed once in the chest, as opposed to struck ten times with a sap. The Court finds that conduct such as here is not sufficiently outrageous to warrant a claim for IIED. Therefore, Defendant's Motion as to this claim must be **GRANTED** as well.

*4. Punitive Damages*

Having found that summary judgment is warranted as to all of Plaintiff's state law tort claims, it is unnecessary for the Court to address the parties arguments concerning the appropriateness of punitive damages in this case.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

---

[49] *Id.* at 879.

[50] *Id.* at 887.

14

Date: June 9th, 2010.